UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARALD GASKO, | ) |
| | ) No. 16 CV 8102 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,[1] | ) ) ) |
| | ) May 8, 2017 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Garald Gasko seeks Disability Insurance Benefits ("DIB") based on his claim that the combination of his cataracts, asthma, and back, knee, and vision problems renders him unable to perform full-time work. After the Commissioner of the Social Security Administration ("SSA") denied his application, Gasko filed this suit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, Gasko's motion is denied and the government's is granted:

**Procedural History**

Gasko filed his DIB application on September 11, 2012, claiming a disability onset date of July 30, 2008. (Administrative Record ("A.R.") at 212-17.) After his claim was denied initially and upon reconsideration, (id. at 100-10), Gasko sought and was granted a hearing before an Administrative Law Judge ("ALJ"), which took

---

[1] Nancy A. Berryhill became the Acting Commissioner on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted as the named defendant in this case.

place over two days on February 11, 2014, and February 18, 2015, (id. at 25-99). On April 27, 2015, the ALJ issued a decision concluding that Gasko is not disabled and therefore not entitled to DIB. (Id. at 9-24.) When the Appeals Council denied Gasko's request for review, (id. 1-6), the ALJ's decision became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Gasko filed this lawsuit seeking judicial review of the Commissioner's final decision, *see* 42 U.S.C. § 405(g), and the parties have consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 8).

**Background**

Because Gasko seeks DIB, he must show that he was disabled prior to his date last insured, September 30, 2008. *See* 20 C.F.R. § 404.131(a); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009). Gasko claims that he became disabled exactly two months before his insured status expired, but at his hearings before the ALJ he was unable to provide any medical records that pre-date 2011. Despite the dearth of any medical evidence from the relevant time period, the ALJ took testimony from Gasko and a medical expert at the first hearing and from two additional medical experts at the second hearing.

A. **The February 2014 Hearing**

At his first hearing before the ALJ, Gasko appeared with a representative who informed the ALJ that he had been unable to obtain any medical records from the time period prior to Gasko's date last insured. (A.R. 52-54.) The ALJ nonetheless took documentary evidence from 2011 through 2013 and heard

2

testimony from Gasko and a medical expert before continuing the hearing to allow Gasko more time to secure his medical records from before 2011.

### 1. Medical Records

The medical records Gasko provided at his first hearing show that between 2011 and 2013 Gasko sought treatment for back, knee, finger, and ankle pain on several occasions, and his weight hovered around 345 pounds. (A.R. 319-20, 324-25.) He was treated with pain medication, and on at least one occasion, a muscle relaxant. (Id. at 317, 320, 385.) One doctor classified his knee pain as a product of osteoarthritis and another noted that it was accompanied with effusion. (Id. at 317, 324.) It was later revealed that Gasko had a history of chronic obstructive pulmonary disorder ("COPD"). (Id. at 325.) In 2013, another doctor diagnosed Gasko as having diabetes mellitus. (Id. at 381.)

The records also reflect hearing and vision complications. In December 2011 Gasko complained of bilateral hearing loss which had persisted for a year. (Id. at 318.) After his ears were cleaned he reported that his hearing returned. (Id.) In May 2013 Gasko complained of foggy vision to an optometrist, who noted that Gasko had possible cataracts. (Id. at 340.) Gasko followed up with another specialist, who examined Gasko and found that he had significant cataracts as well as floaters in the eye.[2] (Id. at 341.) Gasko's vision was recorded as 20/200 in his right eye and 20/30+ in his left eye. (Id. at 346.) In August 2013 Gasko underwent cataract surgery. (Id. at 369.)

---

[2] Floaters are "spots before the eyes" which occur as a "benign degenerative change." *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited May 5, 2017).

3

In February 2013, at the behest of the Bureau of Disability Determination Services ("DDS"), Dr. Richard Bilinsky reviewed Gasko's records to help determine his residual functional capacity ("RFC"). (Id. at 105-09.) Dr. Bilinsky determined that Gasko's file did not contain sufficient medical records from before the date last insured to allow him to assess Gasko's disability status or his RFC during the relevant time period. (Id. at 108.)

### 2. Gasko's Hearing Testimony

Gasko described his work history and his symptoms. Gasko testified that he graduated from high school in 1969 and then completed two years of courses at a community college before dropping out. (Id. at 55-56, 80.) Gasko reported in his Disability Report that he enrolled in a post-secondary education program at a tool and dye trade school, which he completed in 1971. (Id. at 240.) Gasko stated that he started work as a laborer in 1971, constructing high-rise buildings, which required him to lift objects weighing up to 125 pounds. (Id. at 56-57.) He worked as a construction laborer until 1979, when he switched to plumbing work, which he performed until 1992. (R. 57-58.) Gasko testified that he was laid off in 1992, but worked intermittently as a laborer until 2008. (Id. at 60-61.) Gasko reported that he had no earnings in 1993 through 1995, 2002, 2003, 2007, and 2009 through 2013. (Id. at 59-62, 226.)

Gasko testified that since 2008 his pain has prevented him from working. (Id. at 63.) In describing his pain, Gasko said that he experiences numbness in his hands which travels up his arms through his shoulders and down his back and

4

tailbone, causing pain and a "pins and needles" sensation. (Id. at 63-65.) Gasko stated that he experiences additional pain in his left hip and ankle and in both of his knees. (Id. at 71.) Gasko testified that he is able to walk for a maximum of one block and that he has used a self-prescribed cane since 2001. (Id. 71-72.)

Gasko also testified that he experiences problems with his vision and struggles with asthma. (Id. at 68, 72-73.) Specifically, Gasko explained that he underwent surgery for a cataract in his right eye and has a future cataract surgery planned for his left eye. (Id. at 70.) Gasko uses an inhaler to treat his asthma, which impacts his ability to work in dusty environments. (Id. at 72-73.) He also explained that he had hearing issues because of the noise exposure he experienced while working as a laborer, but said at the hearing that he could hear in both ears. (Id. at 85.)

### 3. Dr. Elise Torczynski's Hearing Testimony

The ALJ also heard the testimony of ophthalmologist Dr. Elise Torczynski, who had reviewed Gasko's medical evidence. Dr. Torczynski stated that she could not testify regarding Gasko's vision problems because the record did not include any information from the insured period or from any other relevant time period regarding Gasko's eyesight.[3] (A.R. 95.) She noted that none of the available records reflect that Gasko suffered from cataracts or that he had undergone eye surgery a

---

[3] At the hearing, Gasko's counsel noted that he had been unable to obtain medical records from the hospital where Gasko's cataract surgery was performed. (Id. at 94.)

5

few months prior to the hearing. (Id. at 94-96.) Given the absence of records, she did not provide any opinion regarding Gasko's condition.

### 4. Dr. Sheldon Slodki's Hearing Testimony

Internist Dr. Sheldon Slodki also testified at the February 2014 hearing. (A.R. 301.) After reviewing Gasko's medical file and listening to his testimony, Dr. Slodki testified that Gasko suffers from morbid obesity, hypertension, hearing loss, vision problems including cataracts and floaters, back pain, left knee with effusion,[4] ankle pain, thumb pain, asthma, diabetes, and abdominal pain. (Id. at 78-79.) Dr. Slodki explained that he based his determination of Gasko's vision impairments on Gasko's allegations of cataracts and eye floaters in his complaint, not on medical evidence contained in the record. (Id. at 96.) Although Dr. Slodki opined that Gasko currently would be reduced to sedentary work, he explicitly stated that the available records were insufficient to allow him to evaluate Gasko's RFC before September 30, 2008. (Id. at 79.)

## B. The February 2015 Hearing

After a continuance of just over a year to allow Gasko additional time to obtain relevant medical records, the ALJ reconvened the hearing in February 2015. Gasko's representative explained that despite best efforts, Gasko had been unable to obtain any earlier treatment records. (A.R. 28.) Nonetheless, the ALJ took testimony from two other medical experts, who both testified that they could not

---

[4] According to the hearing transcript, Dr. Slodki stated that Gasko suffered from "left knee with the fusion"; however, his records demonstrate that he was diagnosed with "left knee pain with effusion." (R. 317.)

6

form an opinion from the existing evidence regarding Gasko's condition prior to his date last insured.

1. **Dr. Jerda Riley's Hearing Testimony**

Ophthalmologist Dr. Jerda Riley testified that Gasko had a history of cataract surgery in his right eye and a cataract in his left eye. (A.R. 32.) She stated that his cataract surgery had been successful and that his vision has improved. (Id. at 32-33.) However, Dr. Riley testified that she could not assume that Gasko's vision conditions were present beyond six months to one year prior to his surgery. (Id. at 33.) Dr. Riley further explained that she was unable to opine as to whether Gasko's diagnosis of diabetes had impacted his vision because the record did not indicate retinopathy. (Id. at 34.)

2. **Dr. Ashok Jilhewar's Hearing Testimony**

Internist Dr. Ashok Jilhewar testified that he was able to determine that Gasko suffers from extreme obesity, degenerative joint disease bilaterally, and COPD. (A.R. 36-38.) He noted that the record included a notation of diabetes, but because of the lack of documentation he could not pinpoint the onset date, whether it was controlled or uncontrolled, or whether there were any complications. (Id. at 37.) Finally, he noted that Gasko produced one entry detailing symptoms of back pain and one instance of mild swelling in his right ankle, which he stated can be common in cases of extreme obesity. (Id. at 38.) Dr. Jilhewar testified that based on Gasko's records he was unable to say if any of Gasko's current impairments were present prior to his date last insured. (Id. at 35.)

7

## C. The ALJ's Decision

On April 27, 2015, the ALJ issued a decision denying Gasko's claim for DIB. (A.R. 9-24.) In engaging the standard five-step sequence, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ determined at step one that Gasko had not engaged in substantial gainful activity between his alleged onset date of July 30, 2008, and September 30, 2008, the date his insured status expired, (id. at 15). At step two, the ALJ found that Gasko did not present adequate medical evidence to substantiate the existence of a medically determinable impairment between his alleged onset date and his date last insured. (Id.)

In his decision, the ALJ described a letter provided to him by Gasko's counsel noting that Gasko's treating physician from the relevant period had passed away, and that despite being told that his records were available through Advocate Health Care, records of his treatment could not be located. (Id. at 12.) Because records related to the relevant time period were unavailable, the ALJ examined whether Gasko's evidence post-dating his date last insured could help establish an earlier disability. (Id. at 15-18.) He noted that none of the three medical experts who testified at the hearings could extrapolate Gasko's medical evidence backward in time to determine if he suffered from any severe impairments prior to the expiration of his insured status. (Id. at 18.) The ALJ gave their findings great weight. (Id.) Similarly, he gave good weight to the opinion of the DDS consultant who opined that Gasko's file did not include enough medical evidence from the relevant period

8

to determine Gasko's disability status or his RFC prior to his date last insured. (Id.)

The ALJ also assessed Gasko's credibility, but ultimately ascribed it only slight weight because Gasko had produced no evidence to corroborate his alleged location, duration, frequency, and intensity of pain, no evidence of the type, dosage, effectiveness, and side effects of any medication that he might have taken to alleviate his pain, and no evidence of treatment prior to his date last insured. (Id. at 17.) The ALJ stated that under the Social Security Act he could not accept Gasko's subjective allegations of pain to establish the existence of a medically determinable impairment without the support of objective medical evidence. (Id.) Accordingly, the ALJ concluded that Gasko had not shown that he was disabled prior to his date last insured and, therefore, not entitled to DIB. (Id. at 20.)

## Analysis

Gasko argues that the ALJ failed to support his decision with substantial evidence because, he says, it reasonably can be inferred from the totality of the evidence that his impairments existed prior to his date last insured. (R. 11, Pl.'s Mem. at 4-6.) Specifically, Gasko contends that his character, work history, and earnings record are sufficient evidence that he suffered from severe impairments during the relevant period. (Id.) This court's review of the ALJ's decision is "extremely limited," asking only whether the decision is free of legal error and supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp v. Colvin*, 795 F.3d

711, 718 (7th Cir. 2015) (internal quotations and citations omitted). In order to adequately support the decision the ALJ must build "an accurate and logical bridge from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (internal quotation omitted).

**A. Absence of Medical Records**

Gasko's primary argument is that the ALJ's decision lacks the support of substantial evidence because the available evidence demonstrates that he had severe impairments before September 30, 2008. In considering this argument, the court is mindful that the regulations put the burden squarely on Gasko to produce medical evidence that supports his claims for disability. 20 C.F.R. § 404.1514 ("We need specific medical evidence to determine whether you are disabled . . . . You are responsible for providing that evidence."); *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the [applicant] bears the burden of supplying adequate records and evidence to prove their claim of disability."). In fact, the regulations require that an individual's claims of disabling impairments be "established by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508.[5] As the ALJ and the medical experts pointed out, Gasko did not provide any medical evidence that pre-dates his date last insured or that speaks directly to his condition during the relevant period.

---

[5] In January 2017, SSA amended 20 C.F.R. Parts 404 and 416. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 11, 5844-84 (Jan. 18, 2017), https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00455.pdf#page29. Because this amendment applies only to claims filed on or after March 27, 2017, all references to the regulations in this opinion refer to the prior version. *See* Fed. Reg. at 5844.

Nonetheless, Gasko argues that the ALJ should have accepted his subjective allegations of pain as adequate evidence to establish a medically determinable impairment prior to his date last insured. (R. 11, Pl.'s Mem. at 5.) But this argument is foreclosed by the regulations, which make clear that Gasko's "statement of symptoms" during the hearing is insufficient to establish a physical impairment. *See* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."). Accordingly, Gasko's assertions that his work history and his character are "beyond reproach," cannot compensate for the lack of any medical findings or evidence from the relevant period. (R. 11, Pl.'s Mem. at 5.) That is because no matter how credible an ALJ finds a claimant to be, the presence of a physical impairment cannot be established by his statement of symptoms alone. *See* 20 C.F.R. §§ 404.1508, 404.1529; *Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir. 1991) ("A claimant must provide credible testimony to obtain disability benefits based on pain or other subjective symptoms, *and* the objective medical findings must show a condition that would reasonably be expected to produce that pain or those other symptoms." (Emphasis in original)). The ALJ correctly noted that the regulations do not permit him to rely on Gasko's subjective complaints of pain alone to support a finding of disability.

Furthermore, Gasko has not demonstrated that his earnings history requires a finding that he was disabled in 2008. (R. 11, Pl.'s Mem. at 6.) Specifically, Gasko argues that because he reported no earnings from 2009 through 2013, the ALJ

should have inferred that he did not work because of his impairments. (Id.) Although an ALJ may take an applicant's work history into account when evaluating the credibility of his symptom statements, the ALJ is not required to accept an individual's earnings reports as evidence of a disabling impairment. *See Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (criticizing an ALJ's failure to consider a claimant's work history when assessing his credibility); *see also Gully v. Colvin*, 593 Fed. Appx. 558, 563 (7th Cir. 2014) (stating that a demonstration of earnings during periods when applicant claimed he did not work could diminish applicant's credibility). There are any number of reasons other than disability why a person may have sporadic earnings, and if every claimant who stopped working could demonstrate entitlement to disability benefits based on a lack of earnings, there would be no reason for the five-step analysis. In any event, as explained above, Gasko cannot be considered to have a disability under the regulations unless he produces medical and other evidence required by the regulations. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

Gasko also appears to take issue with the ALJ's treatment of SSR 83-20, 1983 WL 31249 (1983), but his argument here is so underdeveloped that it is unclear whether his reference to that ruling is a simple observation of what the ALJ said or an actual challenge to the ALJ's analysis. (R. 11, Pl.'s Mem. at 4.) Such undeveloped, skeletal arguments are plainly insufficient and could be considered

waived entirely. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003); *Goo v. Colvin*, No. 15 CV 5858, 2016 WL 3520191, at *11 n.1 (N.D. Ill. June 26, 2016). But even giving Gasko the benefit of the doubt and addressing his assertion on the merits, "SSR 83-20 addresses the situation in which an [ALJ] makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time." *See Scheck*, 357 F.3d at 701. That is not the case here. SSR 83-20 defines disability onset date as "the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA . . . for a continuous period of at least 12 months or result in death." SSR 83-20, 1983 WL 31249, at *3 (1983). Medical evidence is "the primary element in the onset determination," although in some cases it may be possible to infer onset "occurred some time prior to the date of the first recorded medical examination." *Id.* at *2-3. To support such an inference, however, the ALJ "should call on the services of a medical advisor" to provide a "legitimate medical basis" for that conclusion. *Id.*; *Eichstadt v. Astrue*, 534 F.3d. 663, 666-667 (7th Cir. 2008) (rejecting argument that ALJ failed to comply with SSR 83-20 where the claimant "did not produce any medical evidence suggesting the presence of a disabling impairment at any time prior to the expiration of her insured status"). When the medical advisor opines that the lack of medical evidence prevents the establishment of an onset date prior to the expiration of an individual's insured status, the ALJ must explore other sources of evidence that could help substantiate the applicant's claims, including other potential witnesses' and the

applicant's testimony. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354, 356 (7th Cir. 2005).

Here, the ALJ called upon the aid of not one but three medical experts to assist him in determining an onset date for Gasko's impairments. After reviewing the available evidence in Gasko's record, each expert individually testified that he or she was unable to extrapolate the medical evidence backward in time to determine if Gasko suffered from any disabling impairments prior to his date last insured. The ALJ gave great weight to the opinions of each of these experts in concluding that there was not enough objective medical evidence to find the existence of a medically determinable impairment between Gasko's alleged onset date and his date last insured. (A.R. 18.) The ALJ also gave good weight to the opinion of Dr. Bilinsky, the DDS consultant, who found no medical records in the file for the period prior to the date last insured. (Id.) The ALJ then properly executed the requirements of SSR 83-20 by exploring other evidence that Gasko presented, which amounted to Gasko's testimony, and explained why he found that evidence insufficient. Accordingly, Gasko has not shown that the ALJ violated SSR 83-20 in evaluating the evidence.

**B. The Worn-Out Worker Rule**

Finally, the court notes that in his motion, "Plaintiff's attorney also cites the Worn Out Worker rule that would apply in this instance." (R. 11, Pl.'s Mem. at 5.) Again, it is unclear whether this skeletal assertion even amounts to an actual challenge to the ALJ's decision, and so the argument may be deemed waived. *See*

*Goo*, 2016 WL 3520191, at *11 n.1. But in the interest of completeness, the court notes that the ALJ fully considered whether Gasko could apply for DIB based on Worn-Out Worker rule, which applies where a person of a certain age or tenure of arduous unskilled physical labor, who meets certain educational criteria, is no longer able to work. 20 C.F.R. § 404.1562. Specifically, the rule applies in some cases to people who have a "marginal education," and in others to people who have a "limited education." *See id.* The Commissioner considers formal schooling less than or equivalent to a sixth grade level as constituting "marginal education." 20 C.F.R. § 404.1564(b)(2). Generally, completion of schooling between grades seven and eleven constitutes "limited education." Id. § 404.1564(b)(3). An individual at any level beyond limited education is deemed as having, at minimum, a high school education. Id. § 404.1564(b)(4).

The ALJ properly concluded that Gasko does not meet the educational requirements set forth in the Worn-Out Worker rule. (A.R. 19.) At the hearing, Gasko testified that he had completed high school in 1969 and subsequently attended two years of college. (Id. at 55-56, 80.) He also reported that he had completed post-secondary education at a tool and dye trade school. (Id. at 240.) Under 20 C.F.R. § 404.1562(a), an applicant must have performed arduous unskilled labor for at least 35 years *and* have a marginal education to qualify for benefits under the Worn-Out Worker rule. To qualify under 20 C.F.R. § 404.1562(b), an applicant must have attained at least 55 years of age *and* have no more than a limited education. Given Gasko's hearing testimony and the record

15

about his level of education, the ALJ properly concluded that Gasko's assessed educational level disqualifies him from being found disabled under either section.

## Conclusion

For the foregoing reasons, Gasko's motion for summary judgment is denied, the government's is granted, and the Commissioner's final decision is affirmed.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**